The Honorable Judges of the United States Court of Appeals in and for the Seventh Judicial Circuit. Hear ye, hear ye, hear ye. All present pending business before this honorable court are admonished to draw near and give their attention, as the court is now sitting. God send the United States and this honorable court. Good morning, everyone. Welcome. Our first case for argument this morning is Melissa Myers v. Sunman-Dearborn Community School District. Mr. Stewart. Good morning, your honors. May it please the court, I have had the honor and privilege of representing Missy Myers in her long struggle for justice for the last three and a half years. This appeal is before this court because the district court below improperly substituted its interpretation of the material facts for that of the jury on three main counts. That is, severe or pervasive harassment, which created a hostile work environment, and whether or not the intolerable working conditions giving rise to constructive discharge, and whether the school had an enhanced FMLA program in which, if it did, Roth interfered with Myers' right to the enhanced FMLA program. With respect to the pervasive harassment, Miss Roth was the new school principal at Myers Elementary School for school year 2018-2019, and the first time Miss Roth met Myers, she told Myers, I heard you have problems at home. Certainly not the warmest way to introduce yourself. Over the course of the next couple of months, Roth also told Myers that she should think about quitting and open a craft shop. This was at the beginning of the school year before Myers had gotten sick from pneumonia and strep throat. Roth also gaslighted Myers into thinking that she was depressed from the recent tragedies that she had suffered, that is, the death of her mother and her husband. If I may, sir, the gravamen of your complaint here is that she was constructively discharged, am I right? Yes, Your Honor. Okay. Now, what does she have to show in order to make out a case of constructive discharge? Well, Miss Myers would have to show that she suffered some degree of harassment that was higher than the normal, and I say normal, in the context of a hostile work environment. In other words, where the working conditions were more severe than you would find in a normal hostile work environment. That's certainly one way that you can show a constructive discharge, but our cases also talk about constructive discharge because discharge is imminent, you know it's imminent, and the ax is about to fall, and therefore you resign. Is that the kind of constructive discharge you're talking about? It's both, Your Honor, and I would suggest to the court that imminent is the wrong legal standard. I would suggest to the court that the real standard for constructive discharge, that is the second way of proving it, is whether or not the termination was likely and in the near future. There is a case out of the Northern District of Illinois that talks about that, and that is the Aaron Cotola case, which I cited to in the reply brief, and in that case, of course, the court said that if the termination is perhaps in the near future, not imminent or immediate, so I believe that the proper standard is— Not explicitly, Your Honor? Well, that is the governing standard. The Supreme Court says what the standard for constructive discharge is, and we're supposed to follow it. Well, the Supreme Court in the Souters case, I believe, did not address whether or not the termination was inevitable or in the near future. No, it says constructive discharge comes from a very serious adverse change in working conditions, right, in terms of conditions of employment. That's hard to see here. One wonders why we should speculate about what might have happened in the future in an alternative world rather than waiting to see what happens. Well, what was serious, Your Honor, and I certainly respect your point, but what is at issue here is that Ms. Roth threatened Ms. Myers that if you miss one more day of work, you will be fired. That's very serious. In the shoes of an average employee when confronted with that threat, that certainly is very serious. But normally the point of such a threat is to cause the employee to stop missing work, not to produce a discharge. I hope you see the problem. I do, Your Honor, and there's another point that I would draw your attention to, and that is Ms. Roth's motivation. If, in fact, she was motivated to get Ms. Myers to resign, then this is one way to do it, and that is to threaten to fire her if she used one more day of authorized sick leave. Quite frankly, it seems to me that no school administration official would discipline somebody for taking authorized sick leave, which is the case here. You don't discipline somebody for following school policy. You discipline them for misconduct, for violation of school policy. That does not exist here in this case. Under that second form of constructive discharge where you're alleging discharge is imminent, the ax is going to fall, do you still have to show intolerable working conditions as a separate element of that cause of action? I would agree, Your Honor. You do? Yes. That's the Chapin case you're relying on for that? Correct. I see. What kind of intolerable working conditions under that second form of constructive discharge do you have to show? Well, because— It must be different than the intolerable working conditions under the first form, or there'd be a— —a sense of personal security. If you're unemployed, then you can't make a living, and of course we know that human beings, one of their principal concerns is their own personal security in the form of staying employed, in the form of having an income. Most employees, when they are threatened with the loss of their job, they see that as very severe, and I would contend that the average juror sitting in the jury box who is employed could certainly put themselves in the shoes of Ms. Myers and view the threat of losing her job as very severe. So it all comes down, then, in your view, to imminency, how imminent the prospect of discharge has to be. Imminent as compared to immediate, yes, Your Honor. Imminent can mean that something that happens, that is a condition preceding to the termination, that is triggered. As Judge Easterbrook says, the cases really have required that it be a fairly definite prospect, don't they? Yes, Your Honor, but certainly a promise or a statement by the penultimate authority in the school, that is the school principal, who tells you, hey, look, if you miss one more day, whether you're sick or not, you're going to be fired. What do you do, then, with the fact that the written missive, which your client received the following workday, was somewhat softer? I gather your view is, well, the jury ought to look at the whole transaction, the verbal and the written, and make up its mind as to whether discharge was imminent. There's certainly one way to interpret that written discipline, and that is the so-called softening, as the district court characterized it. But there's another way to look at it, and that is whether or not Ms. Roth was stacking the deck as a furtherance of her program to intimidate Ms. Myers into resigning. In other words, here's the threat, and I'm not going to write you up, but then the following business day, she in fact does write her up as a further, in furtherance of her effort to get her to resign. In other words, put more pressure on her to resign. So the question is that fine line of how much do you need to get to a jury, and whether we've drawn the line in the right place in our case law. Certainly, and because that line is somewhat, well, it's very elastic, that's why I would argue that it's up to the jury. It's one of those things where the jury, if they see it, then they can make the determination. What would the judge tell the jury about the legal categories of this claim? You've invoked the FMLA and the ADA. Well, yes, Your Honor. And the FMLA has the two strands of doctrine, retaliation and interference, and I'm having some difficulty putting your claim in the proper category. What's your strongest theory here? Well, the events that occurred in this case do make it difficult to separate them into buckets. But in this case, Ms. Roth regarded Ms. Myers as disabled, that is depressed, and that her depression was leading her to be sick, and that because she was sick, she was taking excessive sick days. So that is somewhat complicated. But setting aside the argument about FMLA, Ms. Myers is claiming that Ms. Roth regarded her as depressed or disabled, and that's what led her to – that was in part what led her to try to get Ms. Myers to resign. So you're no longer pressing a claim under the FMLA? You're relying exclusively on the ADA? I am, Your Honor, pressing the claim on FMLA. And quite frankly, the FMLA question is the more difficult claim. Well, you've acknowledged that she wasn't eligible for FMLA leave, so that defeats the interference claim. She was not eligible for the FMLA program as stated by Sundman Dearborn. However, because Sundman Dearborn did in fact have an enhanced FMLA program, she was eligible for the enhanced FMLA program under 29 CFR 825.700. There are no limits to an enhanced FMLA program, and in fact, the FMLA 12-week period of leave is the minimum that the employer is supposed to allow. There are no limits as to how many weeks that employer can grant to the employee. And in fact, in another employee's case, they did in fact allow that employee an extended FMLA beyond the 12 weeks, and which I characterize or which Ms. Myers characterizes as an enhanced FMLA program. I thought the problem was that she had not worked the required number of hours in the previous year, and that was the threshold barrier to the interference claim. That was both the defendant's and the district court's holding. However, under enhanced FMLA, the number of hours worked doesn't matter because that's exactly what an enhanced FMLA means, that you don't have to have worked, you know, the 1,250 hours previously. You can, in fact, take extended FMLA up to one year past the 12 weeks, and in fact, they allowed that for another employee, actually two other employees. Well, if there's an FMLA claim that's live in this case because those threshold requirements are satisfied, is this better conceptualized as an interference claim or a retaliation claim? It would be both retaliation for her having taken FMLA previously and interference for anticipatory FMLA. In other words, and as you know, under retaliation prong, that is interference as well. Thank you. You're into your rebuttal time if you'd like to save a little bit. No, Your Honor. Thank you. Mr. Tarkenton. Thank you. Good morning, Your Honors. May it please the court. I want to begin by taking just a couple minutes to maybe clear up a few factual, I won't say misstatements, but I don't want you to be misconstrued on the facts here. Melissa Myers was employed as an instructional assistant at Bright Elementary. She worked with first grade students. Attendance was an essential part of her job function, and that's clearly set forth not only in written school board policy, but just by common sense. Regular attendance by Ms. Myers was required in order to consistently serve the educational needs of the Bright Elementary students. Also under the school board policy, she was granted eight six days and three personal days a year. In 2017-2018 school year, she missed a total of 25.5 days. That's 14.5 days in excess of that 11 allotted days. She also took FMLA leave. Now, Appellants Council has talked about our FMLA policy. We do not have an enhanced FMLA policy. We give 12 weeks per year, 480 hours, just as required by federal law. We have no more, no less. And there's nothing in the school district's policy that waives that threshold hourly requirement for the previous year? No. I think what Appellants Council is referring to is there was one teacher, her name I believe is Ms. Lau, that had taken FMLA leave during one of the school years. At some point, the school board went back and clarified that the FMLA year, the 12 weeks, runs from July to June instead of January to December. And when it did that, it allowed Ms. Lau to, it gave her the benefit of the doubt and allowed her to take it under that new calendar year where it gave her some additional time. With respect to the enhanced program, we do not allow for a year off of FMLA after the 12 weeks have expired. What we do allow is under a separate medical leave policy, once that 12 weeks is exhausted, you can go to the school board and you can get authorized medical leave for another year. But that doesn't have anything to do with FMLA. Furthermore, even if we had an enhanced program, which we do not, the case law is pretty clear that federal law requires a minimum. It sets that minimum at 12 weeks, at 480 hours. You can't go below it. Of course, you can add more, but when you add more in that enhanced program, there isn't a federal cause of action for violation of an enhanced FMLA program. You are required to do the 12 weeks, and if you mess up on the 12 weeks, then a plaintiff can come after you under FMLA. If you give them more, and there's a problem, there's just simply no cause of action. I think Judge Ripple hit on something that is very critical in this case, and that is whether or not there was an adverse employment action. Your Honor correctly indicated that there are two ways to prove that under the existing case law. The first is where an employee is forced to resign because the discrimination or harassment is more objectively egregious than a hostile work environment. Now, there was no hostile work environment claim in this lawsuit. It's not mentioned at all in the admitted complaint. Nevertheless, in going under that first prompt, the cases are equally clear. You read the facts of them that these are literally, some of them, gun to the head cases. There has to be a threat to your physical safety or a risk of danger. There was nothing of that sort here. Is that true if we're talking about the second prompt? Well, no. Immediate discharge. And I think that's a little less clear because under the second prompt, you still have to have an intolerable work environment, but you also have to have immediate and unavoidable. That's what Chapin says, but if you look at the Supreme Court case, you look at our other cases, we're not talking about an independent intolerable work. They don't talk about intolerable work environment. It's separate and distinct from the immediacy of the discharge. Right. But here, I think the problem is you don't even get to the immediacy because in the Seventh Circuit, imminent means immediate. And I think the best way that we can look at this case, Your Honor, is if we look at this court's case in June of last year, and that's the Ziccarelli v. Dart case. That was an FMLA case, and sort of along the lines of what Judge Sykes was speaking to, there were two FMLA claims. There was an interference claim and there was a retaliation claim. District Court granted summary judgment in defendant's favor on both those claims, and it came up to the Seventh Circuit. Now, in addressing the retaliation claim, which the court upheld, what it talked about, and let me just to get it on the record, what the facts in that case were was Mr. Ziccarelli called in, said, I need to take some more FMLA time. He was already on FMLA, and the person on the other end of the line said, you know, if you do that, you're going to be disciplined. So the facts there are more intense than they are in this case. Nevertheless, what this court said, and I quote, it says, we do not see how, and I'm sorry, Your Honor, I got ahead of myself. As a result of that phone call, Mr. Ziccarelli resigned. It came up through the courts and in its written opinion. The court said, and I quote, we do not see how an employee in plaintiff's position could reasonably just give up and walk away from his job based upon those facts. And I think that sheds light on exactly where the district court ended up in this case. The thrust of this case at bottom, at least procedurally, is that it did not go to the jury. And appellants allege that, well, the district court usurped that responsibility of the trier of fact. But this court, on more egregious facts, has said that there's absolutely no way that a reasonable person would quit, even under the circumstances in Ziccarelli, because there's not an immediate threat. If you look at the written warning in this case, and I think to touch on something that the court mentioned earlier, I think what the written warning did was mitigate any verbal warning. It put it in writing. It got it into the… Trier of fact could certainly decide that. Well, they could. I guess the question is, should the trier of fact have a chance to put that characteristic? No, I don't believe they should under Ziccarelli, because if you look at what the standard that this court set in Ziccarelli, where it did affirm the dismissal of the case based on summary judgment, it's the same facts as we have here. Actually, the facts that we have here are less egregious because it doesn't say. You're going to be disciplined in our corrective action. I mean, we took corrective action. She had failed to show up in 2018-2019 for 17 days as of November 9th. That's 63 days into the school year. We have 180 days of required school days in Indiana, so we're a third into it, and she's already missed 17 days. Mr. Tarkington, in your client's district, you represent the district. Does the principal have the final say on this matter, or is the decision maker someone higher up on the chain? I think as a matter of practice, the principal does have final say. Theoretically, I think it could have been taken to the school board or the superintendent, but for all intents and purposes, the principal is the final decision maker. I see. At least the superintendent does not get involved. Why I ask is this is a new principal. She apparently was a bit of a hard nose. She was trying to straighten the ship out, and I just wondered if somebody else had the option of maybe pulling her in line with the custom and practice of the district. Well, I don't think that there's a custom and practice in the district to allow an employee to miss as many days as they want. The deposition testimony, the depositions are the record, state that she did speak with the superintendent, Andrew Jackson, prior to issuing the written letter on November the 12th. Dr. Jackson was also deposed, and he talked about ultimately it was her decision. He supported her. He did not make the decision. She's in charge of keeping the administrative things going at the individual school level. But, you know, theoretically, the decision could have been overturned by the school board, yes. I don't see why it couldn't have. At bottom, I think what the case is about is, again, the rest of the case is the adverse employment action. And there was simply none. There was nothing that rose to the level of constructive discharge. The district court did a very good job, I thought, in walking through its reasoning. It was not a short opinion. It was about 22 pages long. It took every single fact as true in appellant's favor. And at bottom, it just decided that, look, there's no claim. And there's no claim for a number of reasons. Your Honor discussed the FMLA. And again, she was not eligible. We were, because you have the five factors. You have eligibility. She was not eligible because she hadn't worked the 1,250 hours prior. We are, as the school district obligated to provide that. But even if she's eligible, she's not entitled. She wasn't suffering from any serious medical condition. In fact, if you look at her case, she clearly states that she's not disabled, that depression is not a disability. She's not suffering from depression at the time and had to go on the regarded as theory under the ADA. So it's sort of hard to swear moving forward as regarded as in one and then claiming you were suffering from a serious disability on the other. I think, you know, even more clear is the element, the essential element, that she has to provide notice of the intent to take FMLA. Calling in sick, you know, repeatedly is not enough. Doctor's notes that say you were sick is not enough. You have to put the school on notice of your intention to take that. So even if she were eligible and she were entitled, she still never provided notice. Your Honor mentioned something about there being some overlap between the interference and the retaliation claim. The interference claim has more elements in terms of eligibility and notice than the retaliation claim. I think if you look at the Zigarelli, because the distinction here, the oddity here, I would say, is it's not your traditional retaliation claim as much as it's an anticipatory retaliation claim, which would actually be interference. Nevertheless, under the interference, you know, she herself testified that she had no intention. She did not anticipate herself taking FMLA, so I think it's really impossible, or at least very, very difficult for my client to anticipate that she's going to take this sometime in the future when she herself doesn't, and anything beyond that gets into pure speculation. As far as the more traditional retaliation claim with FMLA, there is some discussion of using the prior as a negative factor in the current decision, and if you look at the record, nothing was discussed about FMLA in the letter. None of those days were counted as the excessive absences, and if you look at her testimony in the deposition, she'll go as far to admit that Ms. Roth never even brought up FMLA in their meeting on November 12th, and I see I'm out of time. Thank you, Your Honors. Thank you very much. Mr. Stewart, rebuttal. Thank you, Your Honor. Just very briefly, there is no requirement for official notification of intent to take FMLA. There can be constructive notice. That is, if somebody is out for more than three days with a serious health condition, that is constructive notice to the employer that that employee might need FMLA, and then that triggers a notification on the part of the employer to the employee that triggers an obligation for the employer. Where does this constructive notice concept come from? Excuse me, Your Honor? Where does the constructive notice concept come from? It comes from if an employee is absent for three or more days. No, I'm asking a source. Is there something in the statute on which you're relying? I can't quote the exact paragraph, Your Honor, but it is, I believe, contained in 29 CFR 825. Thank you. All right. Thank you very much. Our thanks to both counsel. The case is taken under advisement.